IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

USAA CASUALTY INSURANCE
COMPANY,

    Plaintiff,

vs.                                                           Civ. No. 18-588 SCY/KK

BETHANY CALDERON, individually
and as Personal Representative of the
ESTATE OF SEBASTIAN CALDERON
deceased; TIMOTHY WADE, an
individual,

    Defendants.

_____

BETHANY CALDERON, Individually
and as Personal Representative of the
ESTATE OF SEBASTIAN CALDERON,
Deceased,

    Counter-Plaintiff,

v.

USAA CASUALTY INSURANCE
COMPANY,

    Counter-Defendant.

## MEMORANDUM OPINION AND ORDER DENYING USAA'S MOTION FOR SUMMARY JUDGMENT AND GRANTING BETHANY CALDERON'S MOTION FOR SUMMARY JUDGMENT

Resolution of this declaratory judgment action turns on the meaning of "bodily injury" as that term is used in an automobile insurance policy. Defendant Bethany Calderon argues that both she and her husband received a bodily injury when Plaintiff USAA's insured killed her

husband in an automobile accident. Although Ms. Calderon was not herself involved in the accident, she claims damages for loss of consortium which, she argues, constitute a separate bodily injury under the terms of USAA's insurance policy. USAA disagrees, arguing that only Mr. Calderon received bodily injuries in the accident and, therefore, the policy limit of $100,000 per person applies rather than the policy limit of $200,000 per occurrence. Although USAA would have the better end of the argument under the common definition of "bodily injury," Ms. Calderon's argument prevails under the definition of "bodily injury" contained in the policy. Therefore, the Court DENIES Plaintiff USAA's Motion For Summary Judgment Against Defendants Calderon (Personally And As Estate Representative) And Wade, filed January 17, 2019 (Doc. 34); and GRANTS Defendant And Counter-Plaintiff Bethany Calderon, Individually And As Personal Representative Of The Estate Of Sebastian Calderon, Deceased's Motion And Counter For Summary Judgment, filed February 22, 2019 (Doc. 40).[1]

## BACKGROUND

A.  Procedural History

USAA filed this suit on June 25, 2018 against Timothy Wade, its insured who drove the other vehicle involved in the accident, and Ms. Calderon. Doc. 1. USAA filed an Amended Complaint on June 27, 2018. Doc. 6. Ms. Calderon filed her Answer and Counterclaim for Declaratory Judgment on September 20, 2018. Doc. 10. Ms. Calderon also filed an Amended Answer and Counterclaim for Declaratory Judgment on September 20, 2018. Doc. 11. Mr. Wade did not file an answer. USAA answered the Amended Counterclaim on October 9, 2018. Doc. 15. The Amended Complaint and the Amended Counterclaim both ask the Court to issue a

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 16, 18, 17, 27 & 28.

declaratory judgment on the policy limits of the insurance policy USAA issued to Mr. Wade. Doc. 6 at 4; Doc. 11 at 6.

On September 27, the parties met and conferred. Doc. 19 at 1. Mr. Wade attended that conference and indicated he was seeking legal counsel to represent him in the case. *Id.* at 2. He did not take a position with respect to USAA's request for declaratory judgment but reserved the right to do so. *Id.* at 4. Mr. Wade electronically approved the parties' Joint Status Report ("JSR"). *Id.* at 9. Magistrate Judge Kirtan Khalsa held a scheduling conference on November 1, 2018, at which all parties, including Mr. Wade, appeared. Doc. 22. The parties advised Judge Khalsa that this matter would likely be resolved on summary judgment and that the discovery in the case would be limited. *Id.* Accordingly, Judge Khalsa entered a discovery order on a 150-day track. *Id.*; Doc. 23. Judge Khalsa informed Mr. Wade that he would need to file an Answer, but it appears from the docket that he never did so. In addition, mail the Clerk's Office has sent to Mr. Wade apparently is not reaching him. *See* Docs. 29-33, 37, 46 & 52 (notification by the Clerk of Court that mail sent to Timothy Wade has been returned as undeliverable since November 19, 2018). Plaintiff has not filed a request for entry of default or a motion for default judgment.

USAA and Ms. Calderon filed cross-motions for summary judgment soon after the scheduling conference. USAA filed its Motion For Summary Judgment Against Defendants Calderon (Personally And As Estate Representative) And Wade on January 17, 2019 ("the motion"). Doc. 34. Ms. Calderon filed a response on February 19, 2019. Doc. 38. USAA filed its Reply on March 12, 2019. Doc. 42. Meanwhile, Ms. Calderon filed her Motion And Counter For Summary Judgment on February 22, 2019 ("the counter-motion"). Doc. 40. USAA filed a response on March 8, 2019. Doc. 41. Ms. Calderon filed a Reply on April 8, 2019. Doc. 47. Mr.

Wade has not filed any motions or responses. Briefing on both motions is complete and the motions are ready for decision.

B. <u>Undisputed Facts</u>

The undisputed facts, which are set forth in the motions for summary judgment as well as the parties' JSR, are as follows. On August 31, 2016, as Sebastian Calderon (Ms. Calderon's husband) drove his motorcycle down San Mateo Blvd NE in Albuquerque, New Mexico, Mr. Wade struck and killed Mr. Calderon while making a left hand turn in his car. Doc. 19 at 3. At the time of the accident, USAA insured Mr. Wade. *Id.* On January 25, 2018, Ms. Calderon brought a wrongful death suit in state court on behalf of the Estate of Sebastian Calderon and on her own behalf for loss of consortium. Doc. 19 at 3-4. USAA provided a defense to Mr. Wade in the underlying state court action. *Id.* at 4. The parties' settlement talks apparently ran into a road block when they could not agree on the relevant policy limit. Doc. 6 ¶ 13.

In this case, the parties[2] agree that the policy has a limit of $100,000 per person and $200,000 per accident. Doc. 34 at 6; Doc. 38 at 2. In its motion for summary judgment, USAA argues that even though Ms. Calderon asserts claims on behalf of Mr. Calderon as well as on her own behalf for loss of consortium, there is physical injury to one person only and so the per-person coverage limit applies. Doc. 34 at 6-7. In response, Ms. Calderon asserts that there are two bodily injuries – hers and her husbands – and so the higher per-accident limit of liability of $200,000 applies. Doc. 38 at 3. Ms. Calderon argues that, in addition to her husband's bodily

---

[2] Mr. Wade has not taken a position on this dispute. Therefore, the Court's reference to the "parties" encompasses only USAA and Ms. Calderon. However, the Court finds that Mr. Wade has had the opportunity to present his position in this dispute, and he has not done so. In addition, it is unlikely that Mr. Wade's position in this litigation would differ significantly from Ms. Calderon's, as she points out in her brief. Doc. 38 at 3.

injury, her own loss of consortium constitutes a bodily injury because it arises out of the physical injury to Mr. Calderon. Doc. 38 at 6.

Ms. Calderon incorporated the same arguments in her counter-motion. Doc. 40. USAA incorporated the arguments from its motion into its response to the counter-motion. Doc. 41. USAA then filed a reply in support of its motion, Doc. 42, and Ms. Calderon used her reply in support of her counter-motion to essentially file a surreply to USAA's reply, Doc. 47.

## **STANDARD OF REVIEW**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, a dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *S.E.C. v. Thompson*, 732 F.3d 1151, 1156-57 (10th Cir. 2013) (internal quotation marks omitted). Initially, the party seeking summary judgment has the burden of showing that there is no genuine dispute as to any material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the non-moving party must show that genuine issues remain for trial. *Id.*

Because this Court is sitting in diversity jurisdiction, the substantive law governing this case is that of New Mexico. *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1164 (10th Cir. 2017). New Mexico courts "resolve questions regarding insurance policies by interpreting their terms and provisions in accordance with the same principles which govern the interpretation of all contracts." *Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 11, 129 N.M. 698, 702 (internal quotation marks omitted). "In order to determine coverage, [courts] initially look to the language of the policy itself." *Gonzales v. Allstate Ins. Co.*, 1996-NMSC-041, ¶ 12, 122 N.M. 137, 139. New Mexico courts "interpret unambiguous insurance contracts in their usual and ordinary sense unless the language of the policy requires something different." *Id.* (internal quotation marks omitted). "Thus, when the policy language is clear and unambiguous, [courts] must give effect to the contract and enforce it as written." *Ponder*, 2000-NMSC-033, ¶ 11.

## **DISCUSSION**

The cross-motions present a question of contract interpretation. The Limit of Liability section of the insurance policy states:

> For BI (Bodily Injury) sustained by one person in any one auto accident, our maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative or consequential damages recoverable by any persons, is the limit of liability shown on the Declarations for 'each person' for BI Liability. Subject to this limit for 'each person,' the limit of liability shown on the Declarations for 'each accident' for BI Liability is our maximum limit of liability for all damages for BI resulting from any one auto accident. The limits of liability shown on the Declarations for 'each accident' for PD Liability is our maximum limit of liability for all damages to property resulting from any one auto accident.
>
> These limits are the most we will pay regardless of the number of:
>
>     1. Covered persons;
>     2. Claims made;
>     3. Vehicles or premiums shown on the Declarations; or
>     4. Vehicles involved in the auto accident.

Doc. 34 at 14.

The parties agree that, under this language, the $200,000 per-occurrence limit only applies if both Mr. Calderon and Ms. Calderon sustained "bodily injury" in "one auto accident." Therefore, the crucial question in this case is whether the definition of bodily injury includes loss-of-consortium damages that an individual not actually involved in the accident suffers as a result of the accident. Common sense, and the ordinary meaning of these terms, would dictate that because only Mr. Calderon was involved in the auto accident, there was only one bodily injury. However, as Ms. Calderon points out, Doc. 38 at 6, the ordinary meaning of "bodily injury" must yield to the definition of "bodily injury" found in the policy:

> "Bodily Injury" means bodily harm, sickness, disease or death.
>
> "Bodily Injury" does not include mental injuries such as emotional distress, mental anguish, humiliation, mental distress or any similar injury unless it arises out of physical injury to some person.

Doc. 34 at 12.

Thus, the policy's definition of bodily injury is not limited to physical injury caused to a person in a car accident. Instead, it specifically includes "mental injuries" as long as such injury "arises out of physical injury to some person." *Id.* Ms. Calderon's argument is straightforward: her loss of consortium claim is a "mental injury" that "arises out of physical injury to some person," i.e., her deceased husband. Doc. 38 at 6. Therefore, Mr. Calderon is "one person" who sustained bodily injury in an accident, and Ms. Calderon is *also* "one person" who sustained bodily injury in the same accident. *Cf.* Doc. 34 at 14.

USAA primarily relies on the plain meaning of the term "bodily injury," which normally does not include mental injuries. Doc. 34 at 4. USAA cites *Gonzales v. Allstate Insurance Company*, in which the New Mexico Supreme Court found that a surviving spouse's claim for loss of consortium, in a wrongful death action, was subsumed under the compensation for the

wrongful death claim under the language of that insurance policy. 1996-NMSC-041, ¶ 9, 122 N.M. 137, 139. In *Gonzales*, the policy stated that "the 'each person' limitation provides compensation for 'bodily injury . . . including damages sustained by anyone else as a result of that bodily injury' . . . ." *Id.* ¶ 12. Because loss-of-consortium damages are damages sustained by someone else "as a result of that bodily injury," the court had little difficulty in ruling that the wife's claim for loss of consortium was not a separate bodily injury and, therefore, subject to the per-person maximum. *Id.*

The insurance contract at issue in *Gonzales* defined "bodily injury" simply as "bodily injury, sickness, disease, or death." *Id.* ¶ 16. The court looked to the public policy of New Mexico and the "plain meaning" of "bodily injury" with respect to its use in the case law. *Id.* But the court emphasized, several times, that this was a question that would depend on "the language in the particular insurance policy" in the case. *E.g.*, *id.* ¶¶ 2, 9, 12, 16. The *Gonzales* court distinguished several other cases reaching a different result on the ground that the policy at issue in those cases was "materially different." *Id.* ¶ 17. For example, in *Allstate Insurance Company v. Handegard*, 70 Or. App. 262, 688 P.2d 1387 (1984), "the court based its decision on the language contained in the specific policy at issue, which included loss of services in the definition of 'bodily injury.'" *Gonzales*, 1996-NMSC-041, ¶ 26. "Accordingly, the [*Handegard*] court held that in an accident where only the wife sustained physical injury, and her husband suffered the loss of her services, two people suffered 'bodily injury' in one occurrence under the language of the policy." *Id.* (citing 688 P.2d at 1390). "We recognize that different policy language may produce a different outcome; thus, we resolve the issue before us solely on Gonzales' policy and our state statutes." *Id.*

Accordingly, it is the specific policy language at issue in this case that will dictate the result. Here, in contrast to *Gonzales*, the policy defines bodily injury in a different manner than its ordinary meaning. Doc. 34 at 12. The language of the contract controls this dispute, and, pursuant to *Gonzales*, the Court must use the definition of bodily injury in the contract rather than the "plain meaning" of the term. Under USAA's own definition, Ms. Calderon's loss of consortium claim is a bodily injury because it is a mental injury that arose out of physical injury to some person, *i.e.*, her husband.

USAA argues that this interpretation "render[s] without meaning the distinction between 'each person' and 'each accident' in the policy." Doc. 34 at 6. The Court disagrees. Frequently, more than one person is injured in a car accident. If Ms. Calderon had been in the car with her husband and also hurt or killed, there would be no dispute in this case at all: each person who suffered an injury in the accident would be entitled to $100,000 of coverage. USAA is correct that Ms. Calderon herself was not physically injured in the car accident, but it is undisputed that she suffered a mental injury resulting from her husband's physical injury in the car accident.

USAA argues, however, that Ms. Calderon's injury is derivative to her husband's rather than separate. This is important, USAA asserts, because the definition of "bodily injury" in the policy was intended to "harmonize with the Limits of Liability section to limit recovery of all damages that flow from the one person with the one true physical injury." Doc. 34 at 7. Although this may have been USAA's intent, this unexpressed intent must give way to the clear language in the contract. *Ponder*, 2000-NMSC-033, ¶ 14. The language of the insurance contract specifies $100,000 per bodily injury and defines bodily injury to include mental injuries as long as they are based on a physical injury to someone. USAA could have effectuated its stated intent by defining "bodily injury" to include no mental injuries or only mental injuries suffered by the

9

"same" person physically injured (as opposed to "some" person). Or, it could have clarified (as did the policy in *Gonzales*) that damages sustained by anyone else as a result of a physical injury are part of the "each person" coverage.

USAA does make the valid point that provisions of a contract should be interpreted by reading the contract as a whole rather than by simply reading parts of the contract in isolation. Doc. 42 at 6-7. The "Limit of Liability" section, read in isolation, favors Plaintiff's position while the definition of "Bodily Injury," read in isolation, favors Defendant's position. So, what is the result when those two provisions are read together? The Limit of Liability section does provide some indication that when USAA used the term "some person" in the Bodily Injury definition, it meant to use the term "same person." But using one section of a contract to *change* a word used later in the contract is different than using one part of a contract to clarify another part. Thus, rather than clarifying the term "Bodily Injury," reference to the "Limit of Liability" section demonstrates an ambiguity. "In construing insurance policy provisions, ambiguities arise when separate sections of a policy appear to conflict with one another, when the language of a provision is susceptible to more than one meaning, when the structure of the contract is illogical, or when a particular matter of coverage is not explicitly addressed by the policy." *Ponder*, 2000-NMSC-033, ¶ 11 (internal quotation marks and alterations omitted). If the Court were to agree with USAA that the definition of "bodily injury" is flawed or contradictory, it would be required to construe such ambiguity liberally in favor of the insured and coverage. *Safeco Ins. Co. of Am. v. McKenna*, 1977-NMSC-053, ¶ 20, 90 N.M. 516, 520 (1997). Although Ms. Calderon is not the insured, she is arguing in favor of coverage. Therefore, any ambiguity created by reading the Limit of Liability section together with the Bodily Injury definition must be resolved in her favor.

As alleged in her state-court claim, Ms. Calderon suffered a mental injury arising out of physical injury to someone in a car accident during the period of policy coverage. Two people suffered bodily injury in the accident, as defined by the policy at issue. Therefore, the per-occurrence limit of $200,000 applies.

## CONCLUSION

For the above stated reasons, Plaintiff USAA's Motion For Summary Judgment Against Defendants Calderon (Personally And As Estate Representative) And Wade, filed January 17, 2019 (Doc. 34) is **DENIED**; and Defendant And Counter-Plaintiff Bethany Calderon, Individually And As Personal Representative Of The Estate Of Sebastian Calderon, Deceased's Motion And Counter For Summary Judgment, filed February 22, 2019 (Doc. 40) is **GRANTED**.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE
Presiding by consent